46 F.3d 1153
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Leroy WASHINGTON, Defendant-Appellant.
 No. 94-6104.
 United States Court of Appeals, Tenth Circuit.
 Feb. 8, 1995.
 
 Before MOORE, ANDERSON, and BALDOCK, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 This appeal presents only one issue: whether the government breached an implied promise to provide Mr. Washington with protection against specific harm during his pre-testimony incarceration. He suggests this alleged breach was exacerbated by the district court's using his admittedly perjurious testimony to enhance the punishment imposed following his plea to conspiracy to possess cocaine with intent to distribute. We affirm.
 
 
 2
 The parties are well-acquainted with the facts and we need not, therefore, reiterate them for the purpose of this disposition. We conclude Mr. Washington's contentions are without merit because there is nothing in the record to suggest a breach even if there had been an implied promise to keep Mr. Washington segregated.
 
 
 3
 Mr. Washington's testimony at the sentencing hearing demonstrates no threats were made to him by codefendants Norwood and Hickman. At best, Mr. Washington simply "felt threatened" because he was housed in the same cell pod as the other two. More importantly, despite this feeling, Mr. Washington did nothing about it. Mr. Washington knew Agent Lamar was capable of having him moved; indeed, he testified Lamar had done so before the jailers housed him in the same cell pod with the other defendants. Yet, despite that knowledge and his fear, he remained silent.
 
 
 4
 At the same time, Lamar was ignorant of Mr. Washington's move. Had he been advised, Agent Lamar would have had defendant housed elsewhere. He had done so with other inmates in the past, having accomplished such a relocation within as short a time as fifteen minutes.
 
 
 5
 In light of these circumstances, coupled with the fact Lamar took caution to warn the state jailers not to house Mr. Washington with Norwood and Hickman, it is difficult to understand how the government breached even an implied agreement.[2] The record shows Lamar made every effort within his knowledge to keep defendant separated from the others and could have done so after Mr. Washington's last move had Mr. Washington told Agent Lamar about his predicament.
 
 
 6
 Another aspect of the record is also pertinent. Mr. Washington never testified he was actually threatened by anyone. He merely perceived a possibility of reprisal were he to testify truthfully. While that possibility might have been real in his mind, given he had the ability to escape from it by merely telling Agent Lamar of his housing arrangement, it suggests a very insignificant excuse for his false testimony.
 
 
 7
 Mr. Washington's trial counsel advised the district court Mr. Washington's "pride got in the way," and he was not able to verbalize his predicament. Even if true, however, false pride is not a trade off for perjury. Nor does it bind the government to an agreement it did not make.
 
 
 8
 For obviously personal reasons, either pride or perceived danger, Mr. Washington intentionally chose to testify falsely when he had clear means to avoid his predicament. We have no sympathy for that action and believe he cannot complain of the consequences that befell him.
 
 
 9
 In short, we see no evidence in the record indicating the government undertook, as a part of the plea agreement, to do anything other than warn state jailers to keep Mr. Washington away from Norwood and Hickman and upon his transfer to federal incarceration insure that separation was maintained. Agent Lamar did all he could to carry out that undertaking. There was no breach of the plea agreement by any view of the facts.
 
 
 10
 As an aside, we are compelled to observe much of Mr. Washington's argument is predicated upon the contention he believed he had been "double-crossed" by the government and abandoned to the whims of his codefendants. Mr. Washington stated nothing of the kind, and there is no other support in the record for such hyperbole. At this point, the suggestion Mr. Washington must have felt the government breached its agreement is only the unsupported argument of counsel.
 
 
 11
 Consequently, we also note it is only Mr. Washington's chosen form of self-help, based solely upon his perception of his predicament and his misdirected sense of pride, that ultimately enhanced the spectrum of criminal conduct in which he engaged and inexorably led to his ultimate sentence. Because Mr. Washington could have avoided these consequences by either informing his lawyer or the government about his perceived fear before testifying, or by testifying truthfully as he agreed to do, it borders on the disingenuous to suggest his perjury and its consequence was the fault of the government.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Having said this, we do not imply such an agreement existed, or that an implied promise is enforceable as part of a plea agreement